**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CITY OF ANN ARBOR RETIREE HEALTH CARE BENEFIT PLAN & TRUST, Individually and on behalf of all others similarly situated, | Civil Action No. |
| Plaintiff, | DEMAND FOR JURY TRIAL |
| v. | CLASS ACTION |
| ZOETIS INC., KRISTIN PECK, and WETTENY JOSEPH, | |
| Defendants. | |

**CLASS ACTION COMPLAINT FOR VIOLATIONS**
**OF THE FEDERAL SECURITIES LAWS**

1

Plaintiff City of Ann Arbor Retiree Health Care Benefit Plan & Trust ("Ann Arbor RHC" or "Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included a review of the Defendants' (as defined herein) public filings, conference calls, press releases, and announcements, as well as wire and press releases published by and regarding Zoetis Inc. ("Zoetis" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I.    NATURE OF THE ACTION AND OVERVIEW

1.    This is a class action brought on behalf of a "Class" of all persons or entities that purchased or otherwise acquired Zoetis securities between January 14, 2025 and May 6, 2026, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

2.    Zoetis is an animal health company that develops, manufactures, and sells vaccines, medicines, diagnostics, biopharmaceuticals, and digital solutions for companion animals and livestock. Zoetis develops and sells both "Companion Animal" products primarily for dogs and cats, and "Livestock" products for cattle, swine, poultry, fish, and sheep. Based on Zoetis' year end 2025 results, Companion Animal products accounted for approximately 70% of the Company's overall revenue while Livestock products accounted for 29%. Zoetis' flagship Companion Animal products include Librela, Apoquel, Cytopoint, and Simparica Trio, all of which are treatments for dogs. Librela is a monthly injection used to treat arthritis pain and

2

improve mobility.  Apoquel is a daily pill or chewable used to treat allergies and itching.  Cytopoint is an injection that helps control allergic itching and skin conditions.  Simparica Trio is a monthly chewable that protects against fleas, ticks, heartworm, and certain intestinal parasites.  Each of these products requires a prescription or authorization from a licensed veterinarian in the United States.

3.      This case concerns how Zoetis misled investors by portraying its Companion Animal segment and flagship products as a durable growth engine driven by expanding markets, rising market share, and strong veterinarian adoption, while concealing that serious safety concerns, intensifying competition, and declining veterinarian confidence were materially eroding the segment's sales growth, competitive position, and financial outlook.

4.      For example, Librela's sales growth and veterinarian adoption were slowing as veterinarians became more cautious about prescribing the product following the U.S. Food and Drug Administration's ("FDA") December 2024 issuance of a "Dear Veterinarian" letter describing severe adverse neurological events, including seizures and deaths in dogs treated with the drug.

5.      Furthermore, Zoetis' flagship dermatology products, including Apoquel and Cytopoint, faced mounting competitive pressure following the late 2024 launch of Elanco Animal Health, Inc.'s ("Elanco") Zenrelia, a competing therapy that Elanco marketed as comparable or superior to Apoquel in head-to-head clinical studies and at a lower price point. At the same time, Simparica Trio faced increasing competition following the U.S. launch of Elanco's Credelio Quattro, an "all in one" parasite protection therapy designed to compete directly in the same core market. Credelio Quattro was priced below Simparica Trio and offered tapeworm coverage that Simparica Trio lacked, contributing to slowing growth and market share losses for Simparica Trio.

6.      The truth behind Defendants' misrepresentations was revealed over the course of four disclosures spanning from August 5, 2025 to May 7, 2026.  In the final disclosure on May 7, 2026, the Company reported first quarter 2026 financial results that reflected significant deterioration across its core Companion Animal business and sharply reduced its full-year guidance.  On this news, Zoetis' stock price ***plummeted 21.5%*** from $111.22 to $87.31.

7.      As a result of Defendants' wrongful acts and omissions, and the resulting precipitous decline in the market value of Zoetis securities, Plaintiff and other Class members have suffered significant losses and damages.

## II.    JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa).  The Company's common stock trades on the New York Stock Exchange ("NYSE") located in this Judicial District.

11.     In connection with the acts, conduct, and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications, and the facilities of the national securities exchange.

## III.    PARTIES

12.    Plaintiff, as set forth in the accompanying Certification, which is incorporated by reference herein, purchased Zoetis securities during the Class Period and was damaged as a result of Defendants' wrongdoing alleged in this complaint.

13.    Defendant Zoetis is a Delaware corporation headquartered in Parsippany, New Jersey, that develops, manufactures, and sells vaccines, medicines, diagnostics, biopharmaceuticals, and digital solutions for companion animals and livestock.  Zoetis' common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "ZTS."

14.    Defendant Kristin Peck ("Defendant Peck") was at all relevant times Zoetis' Chief Executive Officer.

15.    Defendant Wetteny Joseph ("Defendant Joseph") was at all relevant times Zoetis' Executive Vice President and Chief Financial Officer.

16.    Defendants Peck and Joseph are sometimes collectively, in whole or in part, referred to herein as the "Individual Defendants."

17.    The Individual Defendants possessed the power and authority to control the contents of Zoetis' SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Zoetis' SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Zoetis, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

5

18.     The Company and the Individual Defendants are sometimes collectively, in whole or in part, referred to herein as the "Defendants."

## IV.     SUBSTANTIVE ALLEGATIONS

### A.     Background

19.     Zoetis develops, manufactures, and sells vaccines, medicines, diagnostics, biopharmaceuticals, and digital solutions for companion animals and livestock.  Throughout the Class Period, products within Zoetis' Companion Animal segment were the Company's most business and its principal growth engine.  Those products included Librela, Apoquel, Cytopoint, and Simparica Trio.

20.     Leading into the Class Period, Zoetis repeatedly attributed the Company's accelerating revenue growth and premium valuation to the strength and expansion of its Companion Animal portfolio, particularly within three key therapeutic areas: osteoarthritis pain management (Librela), dermatology (Apoquel and Cytopoint), and parasiticides (Simparica Trio). Because each of these products required veterinarian authorization, Zoetis' Companion Animal revenue growth was dependent on veterinarian confidence in, and willingness to prescribe, these products, making veterinarian adoption trends and competitive dynamics critical to the Company's financial performance and valuation.

21.     Accordingly, investors closely monitored veterinarian adoption trends, prescription demand, market share, competitive positioning, and growth sustainability within these Companion Animal franchises because those metrics were critical to Zoetis' financial performance, long-term growth outlook, and overall valuation.  Throughout the Class Period, Defendants repeatedly emphasized the purported durability, competitive strength, and continued expansion opportunities associated with these Companion Animal products and portrayed them as central drivers of Zoetis' future growth trajectory.

B.    **Defendants' False and Misleading Statements**

*JP Morgan Healthcare Conference (January 14, 2025)*

22.    At the JP Morgan Healthcare Conference on January 14, 2025, the first day of the Class Period, Defendant Joseph described Zoetis as the "market leader" in dermatology and detailed expansion in that segment:

> We built the dermatology market initially with the launch of Apoquel. That was 11 years ago. And *despite a decade of sustained, robust growth, we continue to see substantial room to expand this market*. We're treating approximately 12 million dogs today for itch. Beyond that, there's 13 million dogs globally that are medicalized and are not receiving a prescription medicine for itch. In addition to that, there are 7 million dogs that are getting all the therapies like steroids. *As a market leader, we have a most differentiated set of products to meet the needs of pet owners and veterinarians*.

23.    In response to a question on the FDA's December 2024 "Dear Veterinarian" letter detailing seizures, paresis, recumbency, urinary issues, and death or euthanasia outcomes in dogs that had used Librela, Defendant Peck said:

> We are super excited with the performance of Librela across 2024 . . . It's been the best launch ever in animal health, and we see significant value continuing there. We did get the Dear Vet letter, which I know some investors were surprised *we found terribly helpful actually . . .* And again, *what they were seeing is what we've been telling all of you. It's what's been in our global data.* And what we found helpful is their recommendations in the end were what is in the international label. And so, this is what we've been sharing with you. So, obviously we are continuing to work with the FDA on getting a label update. Many people said we've obviously love that sooner rather than later, but I think investors, and more importantly for us veterinarians and pet owners now have a better understanding what the FDA is seeing. And *it's been consistent with what we've been telling them for the last year*.

24.    In response to a question on the entrance of competing drugs in the market, Defendant Joseph downplayed the risk to Zoetis' business:

> I think we're now showing, right, over the last 12 months or so, a year-and-a-half, in parasiticides, we face direct competition for Trio. And you saw us print 25% growth and *gain market share during that time*. And I think that's exactly what's going to happen every time. But I do think these products, when we launch them, we're very, very careful and deliberate about the profile we want to drive. And *we*

7

*drive high level of satisfaction with these products over time*. And unless you have real differentiation, it makes it very, very hard to take over. ***Now, there is room to expand and so we'll see more competition, but we're confident in our ability to continue to grow***.

*Q4 2024 Earnings Call (February 13, 2025)*

25.    On February 13, 2025, Zoetis conducted an earnings call in conjunction with the release of its 2024 Fourth Quarter and full-year results. On the earnings call, Defendant Peck stated that, despite the FDA's "Dear Veterinarian" letter issued only two months before, "***Librela's US launch is the most successful in our history***, cementing its blockbuster status in less than four quarters, and has quickly become the fourth largest product in our US pet care portfolio."  In response to an analyst question on how veterinarians were responding to Librela, Defendant Peck stated that "***We continue to do blind studies with veterinarians and they continue to be very satisfied with the product, and they continue to intend to prescribe.***"

26.    Defendant Peck stated that Zoetis was positioned to lead in and expand the dermatology market because of, among other factors, customer satisfaction and brand loyalty:

> In our key dermatology franchise, we grew revenue 17% operationally for the year. As we shared at JPMorgan, even with over 25 million dogs treated by our differentiated portfolio to curb itch, the total addressable market is projected to grow to $2.5 billion by 2028, an 11% CAGR. That's because there are still 20 million dogs worldwide who remain untreated or undertreated with a long runway for growth ahead. ***A diverse, safe, and effective portfolio supported by strong customer satisfaction, brand loyalty, and future long-acting formulation positions us to lead and expand the market,*** and at the heart of our success is our commitment to living our purpose each day to nurture the world and humankind by advancing care for animals.

*Bank of America Securities Animal Health Summit (February 27, 2025)*

27.    On February 27, 2025, Defendant Joseph represented Zoetis at the Bank of America Securities Animal Health Summit. Addressing the label update Zoetis applied to Librela warning of neurological and mobility-related events following the FDA's December 2024 "Dear Veterinarian" letter, Defendant Jospeh stated:

As we've talked about before, it's not uncommon to see label updates within the first couple of years of our product launch. And certainly, *we expected to have label updates* and we've had them in other markets as well across our international offerings, in Canada, UK, Switzerland and so forth. So, having a label update here in the US was certainly not unexpected and it's *in line with what we expected*, which is great. So, it's good to have it finalized and have the official approval from the FDA. It's not that if – label changes can't happen any other time during a product lifecycle, but it tend to happen more consistently in the first couple years. And in terms of what this has done, the finality on that is great because it creates that for our vets and our field force, quite frankly, who had a lot more discussion around, well, adverse events that are on this label versus that one, et cetera, and now that's effectively behind us. And *it's been received, well-received from our customers and consistent with what we told them to expect*.

*Barclays Global Healthcare Conference (March 11, 2025)*

28. On March 11, 2025, Defendant Joseph represented Zoetis at the Barclays Global Healthcare Conference.  Addressing the feedback from veterinarians on Librela, Defendant Joseph stated that "*it's been met with very positive feedback from vets and very consistent with what we've been saying to them for the last several months in terms of what we expect to happen. And that label is also very consistent with labels that we have elsewhere in other markets.*"

29. On the dermatology market, Defendant Joseph stated that "when you look at derm, for example, that's been around for over a decade with Apoquel.  We still have more medicalized dogs globally that are not treated than that are treated with our product.  *So we think there's substantial [opportunity] to continue to expand those.*"

*Q1 2025 Earnings Call (May 6, 2025)*

30. On May 6, 2025, Zoetis released its Q1 2025 results and conducted an earnings call to discuss the results.  On the May 6, 2025 call, Defendant Joseph touted Simparica Trio's growing market share:

Across the portfolio, alternative channel sales continued to outpace the vet channel, offering greater convenience for pet owners, improving compliance and stickiness. Driven by strong growth in auto ship programs that boost compliance and increase the lifetime value of each dog on treatment, our Simparica franchise posted 17% US growth this quarter on $260 million in revenue. Additional competitive entrants

9

are accelerating the market's shift to triple combinations *where we continue to gain share*, thanks to the strength of our field force, our first mover advantage, and ongoing innovation, including expanded label claims.

31.    Defendant Joseph also touted the demand from veterinarians for Zoetis' OA pain medications, Librela and Solensia, stating that "*we remain confident in the sizable market potential*. Our foundation is solid and *record penetration confirms that veterinarians want better OA solutions*."

32.    During the Q&A portion of the call, in response to a question from an analyst on price competition and other competitive pressures, Defendant Peck stated:

> We have an excellent product. *It's continued to compete really well in the market*. We're really proud of the execution on this in the US and around the globe. So, we've seen competition. We're obviously going to see more competition. I think what's also something to focus on is that right now we have a 40% share in puppies and obviously, once one dog goes on a product, it's rare that it'll switch. So, I think that's a really good indication of where that's going in the future.

33.    In response to a question from an analyst on the sales outlook for Librela, Defendant Joseph again insisted that Librela was in high demand among veterinarians:

> I think if you look at the performance of Librela, first of all, just to see just how much interest there is in terms of vets looking for solutions for OA pain, you saw 86% penetration across clinics. And *we continue to see very strong satisfaction levels for vets who are using the product*.

*BNP Paribas Animal Health Day (May 22, 2025)*

34.    On May 22, 2025, Defendant Joseph represented Zoetis at the BNP Paribas Animal Health Day. During the event, Defendant Joseph, referring to Zoetis' dermatology products such as Apoquel, stated that "[t]his is not [a market] where we are sitting and waiting to see what the competition does. *This is a market that we've led for a long time and we intend to continue to lead.*"

35.    An analyst at the event asked Defendant Joseph about veterinarian feedback following the label update Zoetis applied to Librela warning of neurological and mobility-related

events as a result of the FDA's December 2024 "Dear Veterinarian" letter detailing severe side effects including seizures, paresis, recumbency, urinary issues, and death or euthanasia outcomes. Defendant Joseph responded:

> [O]ur conversations and I know our investors do quite a bit of channel checks and talk to vets as well, continues to be that ***the satisfaction level with the products is very strong***.

### *Stifel Jaws & Paws Conference (May 29, 2025)*

36.     On May 29, 2025, Defendant Joseph represented Zoetis at the Stifel Jaws & Paws Conference.  Defendant Joseph was also asked about competition from new market entrants, and responded:

> [A]s others launch products and are doing more DTC and more awareness for triple combinations, ***you'll continue to see that drive the overall market. We've been gaining patient share in this space for quite some time.*** It has helped what is a very broad portfolio of parasiticides that we have, but it's helped us to really gain in position from fifth globally to second globally. And so, we continue to be very, very pleased with how Trio is performing. We're 25% in the first year of competition from the player that is actually global leader in parasiticides.

### *William Blair Growth Stock Conference (June 3, 2025)*

37.     On June 3, 2025, Defendant Joseph represented Zoetis at the William Blair Growth Stock Conference.  Defendant Joseph addressed the parasiticides market where Zoetis sold drugs such as Simparica Trio:

> [O]n parasiticides, there are close to 90 million dogs in the US, and I know I'm speaking US largely, but the opportunities are even more vast if you think outside the US, based on where we are in terms of medicalization rates. But if I were to use some of the stats in the US, almost 90 million dogs, only about a third on prescription parasiticides. And of those, a third of those are on triple combination. So, ***the opportunity to continue to expand triple combinations is really significant,*** and we're still talking about two-thirds that are not on prescription and only a third total on parasiticides. So, ***you're going to continue to see the growth of that end of the market for quite some time in expanding***.

38.     Defendant Joseph continued to claim that Zoetis was expanding and beating competitors in the parasiticides market:

The question is ***who's going to get the most of the expansion opportunities that exist***, which is why we started talking a lot about how ***we're getting a higher share of puppies getting on our products*** than our overall share of dogs or adult dogs, if you will . . .. We grew 25% in the first year of head-to-head competition against our triple combination with, we believe, a superior label for our product, which goes back to the other point that I was making.

39.    The statements above in ¶¶ 22-38 were materially false and misleading when made because at the time Defendants touted growing market share, strong veterinarian adoption, and accelerating sales growth across Zoetis' flagship Companion Animal products, Defendants knew or recklessly disregarded that: (i) veterinarian prescription growth and adoption of Zoetis' Librela, a canine pain treatment, were sharply weakening as clinicians became more cautious following FDA safety warnings concerning serious neurological complications in dogs; (ii) Zoetis' Simparica Trio was losing significant market share to a lower priced competing canine parasiticide with broader indicated use in a slowing overall market; and (iii) Zoetis' dermatology products, Apoquel and Cytopoint, were losing substantial market share to a newly launched competing canine treatment.

### C.    The Truth Begins to Emerge

*<u>August 5, 2025 – Truth Is Partially Revealed as Defendants Continue to Mislead Investors</u>*

40.    The truth behind Defendants' misrepresentations began to emerge on August 5, 2025, when Zoetis released its second quarter 2025 financial results, revealing weakening demand trends within the Companion Animal portfolio.  Although Zoetis simultaneously raised its full-year revenue and adjusted profit guidance following better-than-expected quarterly results, analysts nevertheless focused on the unexpected weakness in the Company's flagship pain franchise and the implications for long-term growth sustainability.  On this news, Zoetis' stock price dropped $5.69 per share, or 3.8%, to close at $146.12 per share on August 5, 2025.

41.    Despite this partial revelation, Zoetis continued to mislead the market about the strength and sustainability of its Companion Animal segment.  That same day, during the related earnings call, Defendants reassured investors regarding Zoetis' competitive positioning and market-share strength, stating that "*our key franchises have significant runway for continued, durable growth,*" that Simparica Trio was "*setting the standard of care,*" and that "*Trio remains the trusted first choice for veterinarians and pet owners alike.*"

42.    Defendants further claimed that, "*[t]hanks to our first mover advantage, strong commercial relationships, and preferred position with key veterinary partners,*" competitive activity was "*often reinforcing our leadership,*" and that Zoetis expected these favorable dynamics "*to continue for the foreseeable future.*"  Defendants also represented that Simparica Trio "*has not experienced year-over-year patient share loss since competition launched almost two years ago,*" that it "*remains the market leader in the triple combination space,*" and that Zoetis continued to see "minimal patient share impact due to competition" in dermatology.

43.    With respect to dermatology, Defendants further emphasized that the franchise "*continues to deliver,*" that Zoetis had "*create[ed] the Derm category,*" and that Apoquel and Cytopoint "*help vets personalize care, improve compliance, and deliver high satisfaction, reducing the likelihood of switching, and supporting durable franchise performance.*"

*Morgan Stanley Global Healthcare Conference (September 8, 2025)*

44.    Defendants Peck and Joseph represented Zoetis at the Morgan Stanley Global Healthcare conference on September 8, 2025.  Asked by an analyst about Simparica Trio's market share, Defendant Joseph stated:

> Simparica Trio, first to market in the US with their triple combination back in 2020. And that first to market advantage plus very high level of satisfaction is why *we've been very confident that with competition*, which, by the way, happens in parasiticides as new competitors come into a standard of care, they actually help drive the expansion of that market, which is what we're seeing. We knew that would

13

happen. And certainly, in the first year, almost two years now of your competition, you've seen Trio continue to drive strong double-digit growth for us…. And our market share, *we're continuing to gain share in the space*. If you look at where we are, about 45% of the market right now is triple combinations. But puppies are actually seeing 60% of new puppies are getting on triple combinations. *And we live in that space as well with a share I'm hoping that's higher than our overall share*. So, we like the leading indicators that we see here in terms of where we are, in terms of helping to lead the expansion of that space.

45.     When asked about the dermatology market, which includes Apoquel and Cytopoint, Defendant Joseph expressed confidence in growing market share even with the entrance of new competitors, saying "*we believe we're well-positioned to continue to lead in the growth and the expansion of the market globally, even after competitors come in*."

46.     The statements above in ¶¶ 41-45 were materially false and misleading when made because at the time Defendants touted growing market share, strong veterinarian adoption, and accelerating sales growth across Zoetis' flagship Companion Animal products, Defendants knew or recklessly disregarded that: (i) veterinarian prescription growth and adoption of Zoetis' Librela, a canine pain treatment, were sharply weakening as clinicians became more cautious following FDA safety warnings concerning serious neurological complications in dogs; (ii) Zoetis' Simparica Trio was losing significant market share to a lower priced competing canine parasiticide with broader indicated use in a slowing overall market; and (iii) Zoetis' dermatology products, Apoquel and Cytopoint, were losing substantial market share to a newly launched competing canine treatment.

### *November 4, 2025 – Truth Further Revealed as Defendants Continue to Mislead Investors*

47.     The truth about Zoetis' fraud was further revealed on November 4, 2025, when Zoetis released third quarter 2025 financial results showing slowing growth across its key Companion Animal franchises and lowered its full year sales outlook.  The Company disclosed continued weakness in Librela sales and increased competitive pressure in dermatology and

parasiticides, reflecting weaker operating trends affecting the Companion Animal segment. On this news, Zoetis' stock price dropped approximately $19.89 per share, or 13.8%, to close at approximately $124.46 per share on November 4, 2025.

48.     Despite these further revelations, Defendants continued to reassure investors about Zoetis' competitive position and long-term growth prospects. During the same earnings call, Defendants stated that Zoetis' "*resilient growth engine remains strong,*" that its "*trusted brands*" continued "*to lead their categories,*" and that Trio continued "*to set the benchmark in the category*." Defendants also claimed that Zoetis continued "*to navigate a more competitive US market and hold share with discipline and focused execution,*" and that its "*first mover advantage, strong retail presence, and customer loyalty position us well to sustain momentum across the portfolio.*" With respect to dermatology, Defendants represented that the franchise remained "*resilient,*" and that Zoetis was "*confident our portfolio will maintain its position as a preferred choice among customers.*"

49.     The statements above in ¶ 48 were materially false and misleading when made because at the time Defendants touted growing market share, strong veterinarian adoption, and accelerating sales growth across Zoetis' flagship Companion Animal products, Defendants knew or recklessly disregarded that: (i) veterinarian prescription growth and adoption of Zoetis' Librela, a canine pain treatment, were sharply weakening as clinicians became more cautious following FDA safety warnings concerning serious neurological complications in dogs; (ii) Zoetis' Simparica Trio was losing significant market share to a lower priced competing canine parasiticide with broader indicated use in a slowing overall market; and (iii) Zoetis' dermatology products, Apoquel and Cytopoint, were losing substantial market share to a newly launched competing canine treatment.

15

*February 12, 2026 – Truth Further Revealed as Defendants Continue to Mislead Investors*

50.    The truth about Zoetis' fraud was further revealed on February 12, 2026, when the Company released its fourth quarter and full year 2025 financial results and provided 2026 guidance reflecting further slowing growth.  Although Zoetis continued to portray its key Companion Animal franchises positively, the Company acknowledged increasing competitive pressures in parasiticides and dermatology.  These disclosures further revealed the extent to which competition and weakening growth trends were affecting Zoetis' core Companion Animal products.  On this news, Zoetis' stock price fell approximately $3.03 per share, or 2.35%, to close at $125.64 per share on February 12, 2026.

51.    Notwithstanding these revelations, Defendants continued to reassure investors regarding Zoetis' competitive positioning and long-term growth prospects.  During the earnings call, Defendants claimed that Zoetis continued "***to lead across key brands,***" that Simparica Trio maintained its position as the "***number one selling canine brand,***" and that the Simparica franchise continued to gain share globally despite "***an increasingly competitive market***."  Defendants further represented that Zoetis was "***competing from a position of strength,***" and that the dermatology portfolio remained "***durable.***"  Defendants also assured investors that competitive launch activity had not had "***any significant impact,***" that competitors were achieving only "***very limited impact,***" and that Zoetis remained ***"confident in the long-term strength of Librela.***"

52.    The statements above in ¶ 51 were materially false and misleading when made because at the time Defendants touted growing market share, strong veterinarian adoption, and accelerating sales growth across Zoetis' flagship Companion Animal products, Defendants knew or recklessly disregarded that: (i) veterinarian prescription growth and adoption of Zoetis' Librela, a canine pain treatment, were sharply weakening as clinicians became more cautious following FDA safety warnings concerning serious neurological complications in dogs; (ii) Zoetis'

16

Simparica Trio was losing significant market share to a lower priced competing canine parasiticide with broader indicated use in a slowing overall market; and (iii) Zoetis' dermatology products, Apoquel and Cytopoint, were losing substantial market share to a newly launched competing canine treatment.

*Leerlink Global Healthcare Conference (March 9, 2026)*

53.    Defendant Joseph represented Zoetis at the Leerlink Global Healthcare Conference on March 9, 2026.  When asked about the growth of Simparica Trio in the parasiticides market, Defendant Joseph downplayed the entrance of competing products and touted the opportunity for market growth:

> We think there's still a lot more room to expand into triple combinations in some instances, ***where competitors have launched products, they're just ramping up and therefore are cannibalizing some of their legacy sort of achievements in the process***. But overall, ***there's significant room here for this market to keep expanding***.

54.    When asked about the market demand for Librela, Defendant Joseph stated that the product was stabilizing based on satisfaction levels from veterinarians:

> We have a multi-pronged strategy we continue to execute on and gaining more and more confidence in terms of how that's working, given what we're seeing, which we've described on the last couple of calls in terms of ***seeing stabilizing effects***. And they come by the way of sort of the ***sequential rolling four-week, five-week trends we're seeing in terms of sales, as well as we gauge veterinarians on a regular basis around where their satisfaction levels are, intent to prescribe, and all those things***. And we've seen those elevate from their previous lows to a point where we see the ***combination of those signaling the stabilization of this product***.

55.    The statements above in ¶¶ 53-54 were materially false and misleading when made because at the time Defendants touted growing market share, strong veterinarian adoption, and accelerating sales growth across Zoetis' flagship Companion Animal products, Defendants knew or recklessly disregarded that: (i) veterinarian prescription growth and adoption of Zoetis' Librela, a canine pain treatment, were sharply weakening as clinicians became more cautious following

FDA safety warnings concerning serious neurological complications in dogs; (ii) Zoetis' Simparica Trio was losing significant market share to a lower priced competing canine parasiticide with broader indicated use in a slowing overall market; and (iii) Zoetis' dermatology products, Apoquel and Cytopoint, were losing substantial market share to a newly launched competing canine treatment.

*May 7, 2026 – Further Disclosures Reveal the Truth*

56.    The truth about Zoetis' fraud was further revealed on May 7, 2026, when the Company reported first quarter 2026 financial results reflecting significant deterioration across its core Companion Animal business and sharply reduced its full year guidance.  Zoetis disclosed slowing overall revenue growth, declining Companion Animal sales performance, and worsening results across its key dermatology and parasiticides franchises.  The Company further admitted that "competition intensified across key pet care categories, including dermatology and parasiticides," that "pet owners demonstrated increased price sensitivity," and that "these new entrants have not yet translated into overall market expansion."

57.    Defendants also acknowledged that "price has played a larger role in the decision process," that "[s]hare loss is being amplified by a derm market with declining patient volume in the clinic," and that contraction in the parasiticides market was negatively impacting prescription volumes and compliance.  In addition, the Company admitted that it was operating in "a more price sensitive and competitive environment" and further reduced its 2026 growth outlook based on continuing competitive and operating pressures.  On this news, Zoetis' stock price fell approximately $23.91 per share, or 21.5%, to close at approximately $87.31 per share on May 7, 2026.

18

## V.    ADDITIONAL SCIENTER ALLEGATIONS

58.    During the Class Period, as alleged herein, the Individual Defendants acted with scienter in that the Individual Defendants knew or were reckless as to whether the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and misleading; knew or were reckless as to whether such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

59.    The Individual Defendants permitted Zoetis to release these false and misleading statements and failed to file the necessary corrective disclosures, which artificially inflated the value of the Company's securities.

60.    As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Zoetis, their control over, receipt, and/or modification of Zoetis' allegedly materially misleading statements and omissions, and/or their positions with the Company that made them privy to confidential information concerning Zoetis, participated in the fraudulent scheme alleged herein.

61.    The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of Zoetis securities by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme deceived the investing public regarding Zoetis' business, operations, and management and the intrinsic value of Zoetis securities and caused Plaintiff and members of the Class to purchase Zoetis securities at artificially inflated prices.

## VI.    LOSS CAUSATION/ECONOMIC LOSS

62.    During the Class Period, as detailed herein, Zoetis and the Individual Defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of Zoetis securities, and operated as a fraud or deceit on Class Period purchasers of Zoetis securities by misrepresenting the value and prospects for the Company's business and growth prospects.  Later, when Defendants' prior misrepresentations and fraudulent conduct were disclosed to the market, the price of Zoetis securities fell precipitously, as the prior artificial inflation came out of the price.  As a result of their purchases of Zoetis securities during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## VII.    APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET

63.    To the extent that the Defendants concealed or improperly failed to disclose material facts with regard to the Company, Plaintiff is entitled to a presumption of reliance in accordance with *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153 (1972).

64.    Further, Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

(a)    Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)    the omissions and misrepresentations were material;

(c)    the Company's securities traded in an efficient market;

(d)    the misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

20

(e)    Plaintiff and other members of the Class purchased Zoetis securities between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

65.    At all relevant times, the market for Zoetis securities was efficient for the following reasons, among others:

(a)    as a regulated issuer, Zoetis filed periodic public reports with the SEC;

(b)    Zoetis regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services;

(c)    Zoetis was followed by several securities analysts employed by major brokerage firm(s) who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firm(s) and that were publicly available and entered the public marketplace; and

(d)    Zoetis common stock was actively traded on the NYSE.

66.    As a result of the foregoing, the market for Zoetis securities promptly digested current information regarding Zoetis from all publicly available sources and reflected such information in Zoetis' price.  Under these circumstances, all purchasers of Zoetis securities during the Class Period suffered similar injury through their purchase at artificially inflated prices and the presumption of reliance applies.

## VIII.   NO SAFE HARBOR

67.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and

21

conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Zoetis who knew that the statement was false when made.

## IX. PLAINTIFF'S CLASS ACTION ALLEGATIONS

68. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of a Class consisting of all persons other than defendants who acquired Zoetis securities during the Class Period, and who were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

69. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

70. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

22

71. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

72. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of the Company;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused the Company to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of Zoetis securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

73. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I

### For Violations of Section 10(b) And Rule 10b-5
### Promulgated Thereunder Against All Defendants

74.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

75.    This Count is asserted against Defendants based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

76.    During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

77.    Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

78.    Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws.  These defendants by virtue of their receipt of information reflecting the true facts of the Company, their

control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

79. Individual Defendants, who are or were senior executives and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Zoetis personnel to members of the investing public, including Plaintiff and the Class.

80. As a result of the foregoing, the market price of Zoetis securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Zoetis securities during the Class Period in purchasing Zoetis securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

81. Had Plaintiff and the other members of the Class been aware that the market price of Zoetis securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Company securities at the artificially inflated prices that they did, or at all.

82. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

83. By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of

the Class for substantial damages which they suffered in connection with their purchase of Zoetis securities during the Class Period.

## COUNT II

### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

84.     Plaintiff repeats and realleges the allegations contained in ¶¶ 1-73 as if fully set forth herein.

85.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs.  Because of their senior positions, they knew the adverse non-public information regarding the deteriorating competitive positioning, declining veterinarian adoption, and safety-related concerns affecting Zoetis' core Companion Animal franchises.

86.     As officers of a public business, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

87.     Because of their positions of control and authority as senior executives and/or directors, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein.  The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act.

26

In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Company securities.

88.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)     declaring this action to be a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b)     awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c)     awarding Plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     awarding Plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: May 27, 2026

**LABATON KELLER SUCHAROW LLP**
*/s/ Francis P. McConville*
Francis P. McConville
Connor C. Boehme
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
fmcconville@labaton.com
cboehme@labaton.com

27

*Counsel for Plaintiff*

**VMT LAW**
Thomas C. Michaud
79 Alfred Street
Detroit, MI 48201
Tel: (313) 578-1200
Fax: (313) 578-1201
tmichaud@vmtlaw.com

*Additional Counsel for Plaintiff*

28

## CERTIFICATION

I, Jeremy Flack, as Trustee of City of Ann Arbor Retiree Health Care Benefit Plan & Trust ("Ann Arbor RHC"), hereby certify as follows:

1.      I am fully authorized to enter into and execute this Certification on behalf of Ann Arbor RHC.  I have reviewed a Complaint prepared against Zoetis Inc. ("Zoetis") alleging violations of the federal securities laws, and authorize the filing of this pleading and any subsequent motion for appointment as lead plaintiff, as needed;

2.      Ann Arbor RHC did not purchase securities of Zoetis at the direction of counsel or in order to participate in any private action under the federal securities laws;

3.      Ann Arbor RHC is willing to serve as a lead plaintiff and representative party in this matter, including providing testimony at deposition and trial, if necessary.  Ann Arbor RHC fully understands the duties and responsibilities of the lead plaintiff under the Private Securities Litigation Reform Act, including the selection and retention of counsel and overseeing the prosecution of the action for the Class;

4.      Ann Arbor RHC's transactions in Zoetis securities during the Class Period are reflected in Exhibit A, attached hereto;

5.      Ann Arbor RHC has not sought to serve as a lead plaintiff or representative party in any class action filed under the federal securities laws during the last three years;

6.      Beyond its pro rata share of any recovery, Ann Arbor RHC will not accept payment for serving as a lead plaintiff and representative party on behalf of the Class, except the reimbursement of such reasonable costs and expenses (including lost wages) as ordered or approved by the Court.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct this 26th day of May, 2026.

Jeremy Flack

Jeremy Flack, Trustee

City of Ann Arbor Retiree Health Care Benefit Plan & Trust

2

**EXHIBIT A**

**TRANSACTIONS IN ZOETIS INC.**

| Transaction Type | Trade Date | Shares | Share Price | Cost/Proceeds |
|---|---|---|---|---|
| Purchases | 01/17/2025 | 5 | $167.6400 | ($838.20) |
| Sales | 06/27/2025 | (113) | $156.1700 | $17,647.21 |
| Purchases | 09/19/2025 | 836 | $145.8800 | ($121,955.68) |
| Sales | 10/22/2025 | (166) | $147.1100 | $24,420.26 |
| Sales | 12/19/2025 | (45) | $122.2400 | $5,500.80 |
| Sales | 02/05/2026 | (323) | $126.7300 | $40,933.79 |